24-1785-cv
*Galloway v. County of Nassau*

# United States Court of Appeals for the Second Circuit

AUGUST TERM 2024
No. 24-1785-cv

JOSIAH GALLOWAY,
*Plaintiff-Cross-Defendant-Appellee,*

*v.*

COUNTY OF NASSAU, DETECTIVE MATTHEW ROSS, (SHIELD #834), DETECTIVE CHARLES DECARO, (SHIELD #1047) , DETECTIVE RONALD LIPSON, (SHIELD #1296) , DETECTIVE THOMAS D'LUGINSKI, (SHIELD #7900), DETECTIVE GEORGE DARIENZO, (SHIELD #1038),
*Defendants-Cross-Defendants-Appellants,*

DETECTIVE THOMAS BISCHOFF, (SHIELD #1001), KATHLEEN RICE, ASSISTANT DISTRICT ATTORNEY JOSEPH LAROCCA, ASSISTANT DISTRICT ATTORNEY ROBERT SCHALK, DETECTIVE CHARLES OLIE, SHIELD NO. 1047,
*Defendants,*

NASSAU COUNTY POLICE DEPARTMENT, JOHN DOES #1-20, being and intended to be other parties from the County of Nassau, Nassau County Police Department, Incorporated Village of Hempstead and Incorporated Village of Hempstead Police Department whose names are presently unknown, all jointly and severally, JANE DOES #1-20, being and intended to be other parties from the County of Nassau, Nassau County Police Department, Incorporated Village of Hempstead and Incorporated Village of Hempstead Police Department whose names are presently unknown, all jointly and severally, DETECTIVE SERGEANT RICHARD DORSI, DETECTIVE RENE

YAO, DETECTIVE CARL M. STRANGE, SHIELD NO. 1225,
*Defendants-Cross-Defendants*,

INCORPORATED VILLAGE OF HEMPSTEAD, P.O. STEVEN HOROWITZ, (SHIELD #144), DETECTIVE KEVIN CUNNINGHAM, (SHIELD #112), DETECTIVE JOSEPH SORTINO,
*Defendants-Cross-Claimants*.

SUBMITTED: APRIL 11, 2025
DECIDED: JUNE 26, 2025

Before: JACOBS, CHIN, and MENASHI, Circuit Judges.

Plaintiff-Appellee Josiah Galloway sued five current and former Nassau County detectives, alleging (among other things) that they denied him his constitutional right to a fair trial by: (a) improperly inducing witnesses to identify him as the perpetrator of a 2008 crime, (b) coercing a witness to sign a statement implicating him, and (c) withholding evidence of those deficiencies in the state's case in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Galloway also sued Defendant-Appellant Nassau County for state-law malicious prosecution.

Given the limitations of our interlocutory appellate jurisdiction, as well as of the appellants' briefing, we decide only whether--accepting Galloway's version of events--the detectives were entitled to qualified immunity on the constitutional fair trial claim. Because it was clearly established law by 2008 that detectives could not rig witness identifications, coerce a witness to sign a false inculpatory statement, or ensure that the state withheld evidence of the same from the defense, the district court did not commit legal error in rejecting the detectives' qualified immunity defenses.

**DISMISSED IN PART and otherwise AFFIRMED**.

Judge Menashi dissents in part in a separate opinion.

GABRIEL P. HARVIS, BAREE N. FETT, Elefterakis, Elefterakis & Panek, New York, NY; JIM DAVY, All Rise Trial & Appellate, Philadelphia, PA; ELIANA MACHEFSKY, National Police Accountability Project, Berkeley, CA, *for Plaintiff-Appellee*.

JUDY C. SELMECI, JOHN A. VITAGLIANO, Wilson Elser Moskowitz Edelman & Dicker LLP, New York, NY, *for Defendants-Cross-Defendants-Appellants*.

DENNIS JACOBS, *Circuit Judge*:

After serving nearly a decade in prison for a 2008 attempted murder, Plaintiff-Appellee Josiah Galloway was exonerated. As relevant to this appeal, Galloway then sued five current and former Nassau County detectives alleging that they (1) maliciously prosecuted him; and (2) denied him his constitutional right to a fair trial by (a) improperly inducing witnesses to identify him as the perpetrator, (b) coercing a witness to sign a statement implicating him, and (c) withholding evidence of those deficiencies in the state's case in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Galloway also sued Defendant-Appellant Nassau County for malicious prosecution under state law.

The detectives--Matthew Ross, Charles DeCaro, Ronald Lipson, Thomas Dluginski, and George Darienzo--together with the county moved for summary judgment, in part claiming qualified immunity. The United States District Court for the Eastern District of New York (Donnelly, *J.*) denied the motion in relevant part, and adhered to that decision on reconsideration.

The detectives and county now pursue these interlocutory appeals, ostensibly seeking that we reverse the denial of their motion for summary judgment, which raised multiple issues. However, because of the limitations of our interlocutory appellate jurisdiction, as well as of the appellants' briefing, we consider only a sliver of the claims as to which the defendants sought summary judgment. We have jurisdiction over only the defense of qualified immunity, and only as a matter of law.

Because New York does not grant municipalities a qualified immunity defense to state-law malicious prosecution claims, we lack jurisdiction over Nassau County's appeal. Of the issues within our jurisdiction, the appellants press only qualified immunity as to the fair trial claim. The only reference to malicious prosecution in Defendants-Appellants' opening brief is a list of the claims asserted

in the complaint. The detectives have accordingly abandoned any interlocutory challenge to the district court's denial of qualified immunity as to malicious prosecution. *See In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 276 (2d Cir. 2023) ("[A]rguments not made in an appellant's opening brief are waived even if the appellant pursued those arguments in the district court . . . .") (citation omitted).

We therefore consider only whether, construing the facts in Galloway's favor, the detectives were entitled to qualified immunity on Galloway's fair trial claim. Because it was clearly established by 2008 that detectives could not rig witness identifications, coerce a witness to sign a false inculpatory statement, or ensure that the state withheld *Brady* evidence from the defense, the district court did not commit legal error in rejecting the detectives' qualified immunity defenses.

## I.

We recite the facts in the light most favorable to Galloway.

In 2008, taxi driver Jorge Anyosa was shot in the face during an altercation with another driver. Anyosa survived and assisted the police in creating a sketch of the shooter, with accompanying description: a 25- to 30-year-old man, 5′10″ tall, with short black hair, a medium complexion, and a discernible accent. Galloway was arrested on an unrelated matter three weeks after the shooting. Galloway was 21 years old, 5′5″ tall, wore his hair in braids, and had no accent.

The police then undertook the following measures. Defendants-Appellants DeCaro and Darienzo interviewed Galloway's friend, Robert Ogletree. They kept Ogletree at the precinct for hours, threatened him with criminal charges, and thus coerced him into signing a statement they had fabricated: that Galloway had confessed to shooting a cab driver, near where Anyosa was shot.

At DeCaro's request, Defendant-Appellant Lipson put together two photo arrays, each with the same photo of Galloway plus five fillers. The arrays were first displayed to cab driver Wilmer Hernandez, who witnessed the argument between Anyosa and the shooter. Lipson (and a non-defendant officer) told Hernandez that they "had the person who was the cause of the [Anyosa] incident" in custody, but that "they wanted to show [Hernandez] pictures" as part of an identification process. *Galloway v. Cnty. of Nassau*, No. 19-CV-5026 (AMD) (JMW), 2024 WL 1345634, at *2 (E.D.N.Y. Mar. 29, 2024) (quoting Hernandez's deposition testimony). Hernandez identified Galloway.

Lipson then presented Anyosa with two or three photo arrays containing Galloway's photo. Lipson told Anyosa that Hernandez had already picked the "right person['s]" photo. *Id.* at *3 (quoting Anyosa's deposition testimony). Anyosa initially failed to identify Galloway, but ultimately selected Galloway's photo in one of the arrays. Lipson affirmed that Anyosa had selected the right person.

Galloway was charged in connection with the Anyosa shooting and ordered by the court to participate in a lineup. Defendants-Appellants Ross and Dluginski, who conducted the lineup, seated Galloway with five fillers. They sat Galloway on two phone books, which made him appear taller, and covered Galloway and the fillers with white sheets to mask the adjustment. Besides Galloway, nobody else in the lineup had braids; yet Ross and Dluginski had Galloway and the fillers wear hats. When Anyosa identified Galloway at the lineup, detectives told Anyosa that he had done "a good job" and "got the right person." *Id.* at *5 (quoting Anyosa's deposition testimony). Hernandez, having recognized Galloway from the photo array, then selected Galloway from the lineup.

Ross's then-fiancée, Lori Magliaro, submitted an affidavit attesting that Ross had since admitted that he had "contrived a lineup where [Galloway] wore a baseball cap to conceal the difference in hair" and "made adjustments" "to make [him] look taller" because

"his height was not the same as the assailant[']s." *Id.* (quoting Magliaro's affidavit). Magliaro later disavowed some of her affidavit.

Lipson never disclosed the particulars of his photo identification procedures to the prosecutors, who in turn failed to disclose them as *Brady* material. DeCaro and Darienzo likewise never informed prosecutors that they had coerced and fabricated Ogletree's signed statement, and the prosecutors in turn failed to disclose these facts as *Brady* material.

At trial, Anyosa and Hernandez again identified Galloway as Anyosa's shooter. Ogletree testified that he had been coerced into making a fabricated statement implicating Galloway in the shooting. After receiving an *Allen* charge, the jury convicted Galloway on all counts. Galloway was sentenced to a determinate prison term of 25 years, and five years of post-release supervision.

More than nine years into the prison term, Galloway was exonerated when new evidence implicated a different suspect in Anyosa's shooting. Anyosa told officers in the reopened investigation that he would not have identified Galloway as his shooter if he had been informed that Galloway was several inches shorter than 5'10"-11".

## II.

In an interlocutory appeal of the denial of qualified immunity, we review *de novo*, construing the facts in the light most favorable to the non-moving party (here, Galloway). *See Demoret v. Zegarelli*, 451 F.3d 140, 148 (2d Cir. 2006). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Pursuant to the collateral order doctrine, we have circumscribed appellate jurisdiction over the interlocutory appeal of an order denying qualified immunity. *See Plumhoff v. Rickard*, 572 U.S. 765, 771-72 (2014) (explaining that qualified immunity is immunity from suit, not liability, and therefore is collateral to the merits). Specifically, we have jurisdiction "to the extent that [qualified immunity] turns on an issue of law." *Jok v. City of Burlington*, 96 F.4th 291, 294 (2d Cir. 2024) (citation omitted). We may consider only "stipulated facts, facts accepted for purposes of the appeal, or the plaintiff's version of the facts that the district judge deemed available for jury resolution." *Salim v. Proulx*, 93 F.3d 86, 90 (2d Cir. 1996).

Our jurisdiction does not extend to Nassau County's appeal from the denial of summary judgment on the state law malicious prosecution claim. True, we have discretion to exercise "[p]endent appellate jurisdiction" over an "otherwise unappealable claim [if] the issue is inextricably intertwined with an issue" over which we have jurisdiction, or if "review of the otherwise unappealable issue is necessary to ensure meaningful review of the appealable one." *Britt v. Garcia*, 457 F.3d 264, 273 (2d Cir. 2006). But the malicious prosecution claim against Nassau County does not turn on such an issue. While New York recognizes a state law qualified immunity defense to malicious prosecution, *see Jones v. Parmley*, 465 F.3d 46, 54-55, 63 (2d Cir. 2006) (Sotomayor, J.), a municipal defendant cannot invoke it, even when (as here) municipal liability depends on *respondeat superior*. *See Triolo v. Nassau Cnty.*, 24 F.4th 98, 113 (2d Cir. 2022). Consequently, the county's liability is too far removed from a qualified immunity question to allow for pendent appellate jurisdiction.

We are thus limited to considering the individual defendants' entitlement to qualified immunity. On appeal, they press qualified immunity only as to the fair trial claim; so we consider only that claim.

Qualified immunity "shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (cleaned up). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (cleaned up). "In making this determination, we consider Supreme Court and Second Circuit precedent as it existed at the time of the challenged conduct." *Tripathy v. McKoy*, 103 F.4th 106, 116 (2d Cir. 2024) (citation omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 116 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

The Due Process Clause "guarantees a criminal defendant's right to a fair trial," and it may be vindicated "in an action for damages under 42 U.S.C. § 1983." *Frost v. New York City Police Dep't*, 980 F.3d 231, 244 (2d Cir. 2020). By 2008, it was clearly established that police officers violate the due process right to a fair trial if they rig witness identifications, coerce a witness to sign a fabricated inculpatory statement, or ensure that the state withholds evidence of the same from the defense. In *Bermudez v. City of New York*, 790 F.3d 368 (2d Cir. 2015), we evaluated police conduct from the early 1990s; we denied qualified immunity where a jury could find that police pursued an improper "photo array, lineup, and interrogation of [a witness]," and the "officers misled [the prosecutor]" about those procedures. *Id.* at 376 nn.3-4.

Galloway alleges that each of the individual defendants violated his right to a fair trial through one or more of the following: suggestive photo arrays; a suggestive lineup; coercing Ogletree's fabricated statement; and *Brady* violations. For the following reasons, we find no error of law in the district court's determination that a rational jury could find all five individual defendants liable for violating Galloway's clearly established right to a fair trial.

Specifically: (1) Lipson conducted dubious photo identifications and then withheld *Brady* evidence of that fact from prosecutors (*infra* Part III); (2) Ross and Dluginski conducted an unconstitutionally suggestive lineup (albeit with Galloway present, avoiding any compounding *Brady* issue) (*infra* Part IV); and (3) DeCaro and Darienzo coerced Ogletree into signing a false statement and then withheld *Brady* evidence of that fact from prosecutors (*infra* Part V).

## III.

"A defendant's right to due process includes the right not to be the object of suggestive police identification procedures that create 'a very substantial likelihood of irreparable misidentification.'" *United States v. Concepcion*, 983 F.2d 369, 377 (2d Cir. 1992) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). Due process also "precludes the generation of . . . increased certainty through a suggestive [identification procedure]." *Raheem v. Kelly*, 257 F.3d 122, 135 (2d Cir. 2001). Photo arrays and lineups alike will violate due process if unduly suggestive. *See Concepcion*, 983 F.2d at 377; *Raheem*, 257 F.3d at 134. The suggestiveness of an identification procedure is assessed holistically: even if "none of the[] aspects of the [procedure] alone necessarily would have invalidated the identification, the combination of them all" may "comprise[] a highly suggestive identification procedure." *Dickerson v. Fogg*, 692 F.2d 238, 245 (2d Cir. 1982).

Photo arrays that included Galloway were presented by Lipson to both Hernandez and Anyosa. When the array was presented to Hernandez, Lipson told Hernandez that the suspect was already in custody. In the context of lineups, we have disapproved a similar practice. *See Jenkins v. City of New York*, 478 F.3d 76, 93 (2d Cir. 2007) ("[T]he police generally should refrain from informing a witness that the suspect is in the lineup, [though] a lineup is not unduly suggestive merely because they do so."). Telling the witness a suspect is in custody is even more dangerous before a photo identification. While "any witness . . . must realize that he would not be asked to

view the lineup if there were not some person there whom the authorities suspected," *id.*, the same is not true of photo arrays. *See, e.g.*, *Humbert v. Mayor & City Council of Balt. City*, 866 F.3d 546, 551 (4th Cir. 2017), *as amended* (Aug. 22, 2017) (describing presentation of a photo array to a witness two days before a photo was taken of the suspect ultimately arrested).

Armed with Hernandez's tainted identification, Lipson then showed arrays to Anyosa and obtained an even less reliable identification. Whereas Lipson told Hernandez that the police had a suspect in custody, Lipson went further with Anyosa, confiding that Hernandez had already identified the shooter correctly. Then, once Anyosa identified Galloway's photo after viewing multiple arrays, Lipson confirmed that Anyosa had selected the suspect. We have disapproved of "endorsing the correctness of the selection." *United States v. Thai*, 29 F.3d 785, 810 (2d Cir. 1994); *see United States v. Moskowitz*, 581 F.2d 14, 20 (2d Cir. 1978) ("[A] witness's belief" in her identification "may be improperly reinforced by the confirmatory remarks of [law enforcement].").

Most importantly, Lipson compounded the prejudice to Galloway by withholding information about the photo array procedures from the prosecutors. It was clearly established by 2008 that police officers violate *Brady* when they withhold exculpatory evidence from prosecutors. *Cf. Walker v. City of New York,* 974 F.2d 293, 299 (2d Cir. 1992) ("[P]olice satisfy their obligations under *Brady* when they turn exculpatory evidence over to the prosecutors."). That specifically includes "misl[eading]" prosecutors "as to the nature of . . . photo identification procedures." *Bermudez*, 790 F.3d at 376 n.4. While we have disapproved tactics used in the photo identifications here, we need not decide whether they violated clearly established law; Lipson's qualified immunity defense fails in any event because he misled prosecutors.

## IV.

Next, a jury could find that Ross and Dluginski conducted an unduly suggestive lineup. Anyosa had described his shooter as over 5′10″, with short hair. Yet Ross and Dluginski conducted a seated lineup that masked Galloway's 5′5″ height and hid his (braided) hair.[1] It is clear, as confirmed in the first affidavit of Ross's fiancée, that these machinations invited an identification that would not otherwise have been made.

Ross and Dluginski defend their lineup on the ground that neither the concealment of hair or of height is *per se* unduly suggestive; and that their subjective intent could not turn acceptable identification techniques into an unduly suggestive procedure. These arguments are sound, but miss the point.

"A lineup may be suggestive to one viewer even though it is not to another." *Raheem*, 257 F.3d at 134. In *Raheem*, we observed that a lineup that includes only one short participant--the suspect--will be unduly suggestive only to a viewer who has already insisted that the perpetrator is short. *See id.* at 134-35. This case presents the converse: a lineup that *hides* that the suspect is short is unduly suggestive to a viewer known to believe that the perpetrator is tall.

Qualified immunity does not shield Ross and Dluginski. It was clearly established that police could not use identification procedures that are unduly suggestive *as to a particular investigation*, even if those same procedures would be textbook in another. "[I]t is the *likelihood* of misidentification," by the particular viewer "which violates a defendant's right to due process," not the method. *See*

---

[1] It also appears that Galloway and the fillers did not speak as part of the lineup, despite that Anyosa had described his assailant as having an accent, while Galloway had none. *See* Appellant's Br. 12 ("Anyosa and Hernandez each *viewed* the lineup" (emphasis added)).

*Raheem*, 257 F.3d at 133-34 (emphasis added) (quoting *Neil v. Biggers*, 409 U.S. 188, 198 (1972)); *see also Neil*, 409 U.S. at 198 (explaining that evidence of a "showup" does not categorically violate due process; "the likelihood of misidentification" at a given showup is dispositive).

Moreover, the jury could find, based on the first affidavit of Ross's fiancée, that Ross and Dluginski knew that the lineup would be unduly suggestive. True, as the partial dissent usefully explains, "we do not consider the subjective intent, motives, or beliefs of the officials" when "determining whether official conduct was objectively reasonable." *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 106 (2d Cir. 2003); Dissent at 7-8. *But cf. Galloway*, 2024 WL 1345634, at *12 (stating, perhaps imprecisely, that the lineup would be unduly suggestive if Ross and Dluginski "inten[ded] to conceal the plaintiff's height and deprive him of a fair trial"). Nevertheless, "the information that [Ross and Dluginski] possessed when they made the[ir] decisions . . . *is* a part of the mix." *Id.* The question is whether a reasonable officer "*acting under the circumstances then confronting [him]*, would have understood that the applicable law was being violated." *Id.* (quoting *Vega v. Miller*, 273 F.3d 460, 466 (2d Cir. 2001)). Ross and Dluginski, knowing that the witnesses believed the shooter to be tall with short hair, would have so understood--Anyosa has since confirmed that he never would have identified Galloway as his shooter if he had known Galloway's height.

## V.

Galloway alleges that Defendants-Appellants DeCaro and Darienzo coerced Ogletree into signing a fabricated statement: that Galloway had confessed to shooting a cab driver. Under law clearly established by 2008, a police officer violates a plaintiff's right to a fair trial when he "creates false information likely to influence a jury's decision and forwards that information to prosecutors." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). In *Frost*, we found this standard satisfied where (1) a witness was purportedly

coerced to identify the plaintiff as a perpetrator, and (2) a reasonable jury could have found that this coerced identification "critically influenced" the prosecutor's decision to pursue charges. 980 F.3d at 248 (citing *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016)). Ogletree's statement was provided to prosecutors before they charged Galloway with the shooting. A reasonable jury could conclude that, as in *Frost*, this coerced statement "critically influenced" the decision to prosecute Galloway. Moreover, a reasonable jury could also find that DeCaro and Darienzo "misled [the prosecutor]" about "the fact that [Ogletree's] testimony was coerced," *Bermudez*, 790 F.3d at 376 n.4--a *Brady* violation.

## VI.

Finally, each individual defendant argues that he is entitled to summary judgment on qualified immunity grounds for events in which he did not participate. Ross, for example, argues that he "could not have intervened . . . in events he was not involved in," and that "it was clearly established at the time of these events that a police officer does not violate a suspect's constitutional rights by merely not intervening where the officer is not present." Appellant's Br. 23.

The defendants are pressing on an open door. The district court's rulings on qualified immunity did not hold expressly or implicitly that the detectives could be liable for constitutional violations in which they played no role, whether under a "failure to intervene" theory or otherwise. The district court rejected that suggestion when confronted with a motion for reconsideration on this very ground.

The district court observed that "[o]ne of the themes the County presses . . . is that the defendants cannot be held liable if they were not physically present for certain conduct." *Galloway v. Cnty. of Nassau*, No. 19-CV-5026 (AMD) (JMW), 2024 WL 2960532, at *2 (E.D.N.Y. June 11, 2024). The court specifically acknowledged each such argument: "Darienzo, [Dluginski], and DeCaro cannot be held

liable for . . . the photo array"; "Lipson, DeCaro, and Darienzo cannot be held liable for . . . the line-up"; "Ross cannot be held liable for any . . . violations that occurred before the line-up"; and "[Dluginski] cannot be held liable" for "Ogletree's statement." *Id.* at *3. The district court confirmed that it agreed, and had already "accounted for these unremarkable propositions in its order," *id.* at *3, and underscored them in so many words: "[o]bviously, the defendants cannot be liable for conduct in which they had no involvement," *id.* at *3 n.4 (discussing malicious prosecution claims that survived "[f]or the same reasons" as the fair trial claims). Moreover, the district court has ample tools to ensure that each defendant is liable only for his own conduct. For example, Fed. R. Civ. P. 49(b)(1) allows the court to require "a jury to return only a special verdict in the form of a special written finding on each issue of fact." *See, e.g.*, *Aczel v. Labonia*, 584 F.3d 52, 54-55 (2d Cir. 2009) (describing juror form that asked jurors to identify the damages that each defendant's constitutional violation had proximately caused). The district court did not make the error the defendants urge us to correct.

* * *

All members of the panel agree that summary judgment was appropriately denied on Galloway's Due Process claim against Lipson, DeCaro, and Darienzo. *See* Dissent at 13. Insofar as there is a parting of ways, we disagree respectfully, as follows:

**1.** Our partially dissenting colleague would hold that Ross and Dluginski are entitled to qualified immunity. *See* Dissent at 6-7. The dissent reasons that "existing precedent" in 2008 had not "placed . . . beyond debate" the "statutory or constitutional question" of whether police may use phone books, hats, and sheets to obscure a suspect's short height and braided hair from a witness who they know believes the perpetrator is tall and short-haired. *See* Dissent at 8 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).

We disagree. It is (and was) clearly established that identification methods bearing a "likelihood of misidentification" of the accused violate due process, no matter their form--just as procedures without such a likelihood do not. *See Raheem*, 257 F.3d at 133-34; *Neil*, 409 U.S. at 199. It is immaterial whether appearance is disguised by phone books, or by cigar boxes, or by pillows, or by hats, sheets, eyelashes, moustaches or pimples. With enough artifice and disguise, almost anybody may end up fingered.

In employing such artifices, Ross and Dluginski could claim qualified immunity only if a "reasonable official" would not "have understood" that he was "violat[ing]" due process. *Horn v. Stephenson*, 11 F.4th 163, 169 (2d Cir. 2021) (cleaned up). "[P]recedent involving 'fundamentally similar' facts" is not required; "[t]he salient question is whether the state of the law gave the defendant fair warning that his alleged treatment of the plaintiff was unconstitutional." *Id.* at 171 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Ross and Dluginski had such warning: every reasonable officer would have understood that their lineup was unduly likely to result in a misidentification--as the state, having now released Galloway, apparently believes that it did.

**2.** The dissent argues that Lipson is entitled to summary judgment on Galloway's "separate due process claim that Lipson subjected Galloway to impermissibly suggestive identification procedures," as distinguished from Galloway's claim premised on *Brady* violations. Dissent at 5. But the district court has already clarified that there is no such freestanding claim against Lipson; Galloway has a single, unitary fair trial claim against Lipson under the Due Process Clause. *See Galloway*, 2024 WL 1345634, at *22; 2024 WL 2960532, at *3. As the district court held on reconsideration, "at least one theory of liability applies to each fair trial claim against each County defendant," so that those claims "survive summary judgment." 2024 WL 2960532, at *3.

**3.** The dissent argues that the district court erred in denying qualified immunity as to the malicious prosecution claims. *See* Dissent at 11. As we have explained, *see supra* at 4-5, this challenge has been waived for want of briefing. Accordingly, we express no opinion on its merits.

For the foregoing reasons, Nassau County's appeal is dismissed. We affirm in all other respects.